HOWARD PAYSON WILDS, Appellant, v. THE ST. LOUIS, ALTON AND TERRE HAUTE RAILROAD COMPANY et al., Respondents.

A first mortgage upon the property of defendant, The St. L., A. & T. H. R. R. Co., contained provisions to the effect that twice a year, out of any surplus of net earnings, the company should pay to the trustees $12,500 as a sinking fund for the redemption of the bonds secured, with which and the accumulation of interest thereon the trustees were required to purchase outstanding bonds so long as they could be purchased at not more than ten per cent above par; the bonds so purchased were directed to be deposited, but it was provided that they should remain in force and interest be paid thereon by the company, the amount thereof to be added to the capital of the sinking fund and invested in the purchase of other bonds. In case of inability to purchase said bonds at the prescribed rate it was provided that the sinking fund on hand should remain at interest until the authorized purchases could be made, and that "no further payments shall be payable to the said sinking fund till the money so remaining in the said fund can be used in purchasing said bonds * * * when such payments of $12,500, semi-annually, shall be resumed." The price of said bonds having gone above the permitted purchase-price, the semi-annual payments were discontinued, but the company proposed to continue the payment to the trustees of interest on the bonds then held by the sinking fund. In an action to restrain such payment, held, that conceding the bonds so held ceased upon their purchase to constitute any part of the corporate debt, the duty of continued payments of interest as contributions to the sinking fund was continued, and was not affected by the provision quoted, which applied simply to the regular semi-annual payments: and that, therefore, the action was not maintainable.

(Argued April 21, 1886; decided June 1, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made October 15, 1884, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, as a preferred stockholder of defendant, the railroad corporation, to restrain the company from making certain payments to the sinking fund created by a first mortgage upon its property.

The material facts are stated in the opinion.

*Thomas Thacher* for appellant.

*Adrian Van Sinderen* for respondents. There is nothing in the sinking fund provision, nor in any other provision of the instrument of which it forms a part, to give color to the idea that any suspension or interruption of the regular payments of interest on the bonds of the company was for a moment contemplated. (Potter's Dwarris on Stat. [ed. 1873] 194, 218.) The mortgage, with the issue and distribution of bonds under it, creates a trust, of which the selected mortgagee, or his duly constituted successor, is the trustee and the bondholders primarily, and the stockholders ultimately, the beneficiaries. (*Gilfillian* v. *Un. Can. Co.*, 109 U. S. 403.) The contemporaneous practical construction of a statute by those who are called upon to carry it into effect will be upheld by the courts. (*U. S.* v. *Pugh*, 99 U. S. 265; *Edward's Lessee* v. *Darby*, 12 Wheat. 210; *U. S.* v. *Alexander*, 12 Wall. 177; *Peabody* v. *Stark*, 16 id. 240; *Smythe* v. *Fisk*, 25 id. 382; *U. S.* v. *Moore*, 95 U. S. 768; *Hahn* v. *U. S.*, 107 id. 402; *U. S.* v. *Graham*, 110 id. 219; *In re Iowa & Ill.*, id. 485.) The contract rights of the bondholders are entitled to consideration. (*Canada So. R. Co.* v. *Gebhard*, 109 U. S. 527, 534–5.) This court has no power to enlarge the terms of the deed or the powers of the trustees. The terms of the deed are clear and explicit. The duties imposed upon the trustees are imperative. The securities in which the funds are to be invested are plainly stated. The deed, when made, was such as was intended by the parties and holders of the first mortgage bonds. (*Clark* v. *St. Louis, etc., R. R. Co.*, N. Y. Daily Reg., Nov. 3, 1879.)

Finch, J. The construction of a sinking fund contract, accompanying the execution of a first mortgage, and intended to provide for its ultimate payment and discharge, is the question of law presented by this appeal. The St. Louis, Alton and Terre Haute Railroad Company bought its property subject to certain incumbrances which it assumed and agreed to pay, and which thus became legally, as they were in fact, the debts and

obligations of the corporate purchaser. These consisted of bonds to the amount of $2,200,000, drawing seven per cent interest, and secured by a first mortgage upon the railroad purchased; of a second mortgage upon the same property, under which bonds to the amount of $2,800,000 have been issued and are outstanding, also drawing seven per cent interest; and which second mortgage further secured, in a specified order of priority, income bonds payable out of surplus earnings to the amount of $1,700,000, drawing interest at seven per cent, and a preferred stock of the same amount entitled to a seven per cent dividend out of net earnings, the larger part of which stock has been issued, and is now outstanding. This second mortgage and its group of protected obligations were more or less depressed in value by the shadow and threat of the large prior incumbrance, and likely to be floated upon the market at some serious sacrifice for that reason. Whatever could be done to provide for the payment and discharge of the first mortgage and the ultimate removal of its lien would tend to strengthen the subsequent securities, and permit their negotiation at prices so much higher as to compensate for such loss of interest as might accrue from the plan adopted. These considerations, and a desire to increase and strengthen the value of the common stock in the hands of its holders, led to the provisions in the first mortgage which organize and constitute a sinking fund. These are in substance that twice a year out of any surplus of net earnings over and above expenses and fixed charges, the company should pay to the trustees of the first mortgage the sum of $12,500 as a sinking fund for the redemption of the bonds it secured; that the trustees should at once deposit such sums in the United States Trust Company of the city of New York, or in some other safe depository in that city; that with such money and all accumulations of interest thereon the trustees should buy the outstanding first mortgage bonds so long as they could be purchased at a rate not exceeding ten per cent above par with the accrued interest, the disposition of which was thus described: "The bonds so purchased shall be deposited with said trust company, and be immediately stamped or in-

dorsed as belonging to said sinking fund, but shall remain in force and the interest thereon shall continue to be paid by the said St. Louis, Alton and Terre Haute Railroad Company, and the amount of such interest shall be added to and applied as a part of the capital of the sinking fund hereby established, and be invested in the purchase of other bonds in the same manner as. the semi-annual payments of $12,500 herein provided for." To meet the emergency of an inability to buy the bonds at or below the prescribed rate the mortgage stipulated that, in such event, " the said money shall remain at interest until bonds can be purchased at public or private sale, at such rate; and no further payments shall be payable to the said sinking fund till the money so remaining in the said fund can be used in purchasing said bonds at such rate or under, when such payments of $12,500 semi-annually shall be resumed."

The emergency thus contemplated actually arose. The price of the bonds went above the permitted purchase rate after $636,000 of them had been bought and placed in the sinking fund. The semi-annual payments of $12,500 were thereupon discontinued, but the company intending to continue the payment of interest to the trustees upon the bonds held by the sinking fund, a preferred stockholder objected and brought this action to prevent such payment.

Two clauses of the sinking fund article, if literally read, clash and need to be reconciled. The purpose to keep the bonds purchased valid and living obligations against the company, so far as the payment of interest is concerned, until their maturity, is clearly and strongly expressed. Conceding even that the bonds themselves, immediately upon their purchase, ceased to constitute any part of the corporate debt, and were practically extinguished, and that the provision for interest payments was only a mode of measuring and determining the amount of prescribed contributions to the sinking fund, those contributions, at least, are directed to be made so long as interest accrues upon the bonds treated as valid obligations. They are to " remain in force " for the purpose of interest payments, and those, whether deemed payable as interest strictly, or as

contributions to the sinking fund, are payable until the bonds mature, and a default in the bonds outstanding as obligations, or in the payments due to the sinking fund, by the terms of the mortgage, may be followed by proceedings in foreclosure under the provisions applicable in case of such default.    The duty of continued payment of interest is thus entirely plain, until confronted with the later clause which directs, in case the bonds appreciate beyond one hundred and ten and purchases cease, that "no further payments shall be payable to the said sinking fund," until the permitted purchases can be resumed.    The payment of interest upon the purchased bonds is a payment in to the sinking fund, and so comes a collision between a command to pay interest until the bonds mature, and one to cease payments before that if the bonds rise above the prescribed value.    The natural and obvious solution of the difficulty is suggested by the instrument itself, and is that the payments referred to in the later clause are the semi-annual payments of $12,500.    The payments to be stopped are identical with those to be resumed as indicated by the words "such payments," and since those to be resumed were expressly declared to be the $12,500, it follows that those and those only were the payments to be discontinued.    This construction is fortified by another circumstance.    While the bonds were below the maximum of purchase both the interest payment and the gross payment were to be made.    If, when the bonds reached one hundred and ten, both payments were to cease, then, upon the appellant's construction, when they dropped below that value only one is to be resumed, and the interest payments once stopped are ended forever, and cease to be due when the precise circumstances again exist which made them at first payable.

The principal argument against this construction is, that it involves waste, because while bonds cannot be purchased and are drawing seven per cent, the money on deposit in the trust company will draw but two per cent.    There are two sufficient answers to this contention.    When the plan was adopted nobody foresaw or sought to provide against so great a reduction in the rates of interest as has since occurred, and when the

contract was made, the possible loss from difference of interest was not deemed important. But a further answer is found in the suggestion of the learned judge at Special Term, and cannot be better stated than in his own words; that "the safety of the money paid into a sinking fund is of more importance than the amount of interest it might earn." It would seem as if that lesson might have been readily learned from the financial history of the past, and have exerted a predominant influence upon the sinking fund devised. Railroad mortgages are seldom made to be paid. If the company is successful they are often renewed, and the money which might have been used for their discharge is largely spent in heavy salaries, increasing expenses, and questionable extensions of the line. If the company is unsuccessful the end is foreclosure and wreck. But where a mortgage is made to be paid, and the credit and market value of subsequent securities depend upon it, a plan like that devised in the present case is wise and prudent even if it involve some loss of interest. The normal operation of this sinking fund, if the bonds had kept below one hundred and ten, would have redeemed them all at maturity. If it fails of complete success it is due to a partial suspension of its operation, but that should extend no further than the fair construction of the mortgage requires. We think the courts below decided correctly that the interest payments to the sinking fund must continue until the maturity of the mortgage.

The judgment should be affirmed, with costs.

All concur, except RAPALLO, J., dissenting, and MILLER, J., not voting.

Judgment affirmed.