## CHICAGO & I. R. Co. and another *v.* PYNE and others.

*(Circuit Court, S. D. New York.* February 22, 1887.)

RAILROADS—BONDS—PAYMENT BEFORE MATURITY.

The complainant railroad, having executed certain mortgage bonds payable in 30 years, made a traffic contract with another railroad by which it was agreed that the latter road should retain complainant's share of the earnings under the contract, and pay them over semi-annually to a trustee, to be applied to the redemption of the bonds, the contract to continue in force for 30 years, "or *for so long a time* as will be sufficient to provide a fund large enough to redeem all of said bonds." This agreement was indorsed on the bonds. *Held,* in an action between the complainant railroad and the bondholders, that this agreement did not give the railroad the right to pay off the bonds as soon as a fund sufficient for that purpose had accrued, and without waiting for the expiration of the 30 years, when the bonds were to mature.

On motion for Interlocutory Injunction.
*R. H. Bristow,* for complainants.
*Joseph H. Choate,* for defendants.

WALLACE, J. The complainants seek an interlocutory injunction to restrain the defendants from prosecuting actions at law. The bill of

complaint alleges that the complainants are entitled to discharge and re-deem certain mortgage bonds, amounting to $600,000, created by the Chicago & Iowa Railroad Company, one of the complainants, and owned by the defendants; that the defendants have brought actions at law against such complainant to recover upon coupons for unpaid interest of said bonds; and that the matters of the bill cannot be interposed by way of defense to the actions at law, but are of equitable cognizance solely.

The defendants have acquired the bonds and coupons as the executors and legatees under the will of Moses Taylor, deceased. Taylor pur-chased the bonds after they had been negotiated by the Chicago & Iowa Railroad Company. At the time of the purchase each bond had printed upon it a contract between that company and the Chicago, Burlington & Quincy Railroad Company. Unless this contract authorizes the com-plainants to discharge and redeem the bonds before maturity, they are not entitled to equitable relief. The bonds are part of an issue of 1,000 for $1,000 each, dated, respectively, November 1, 1869, payable in 30 years from January 1, 1870, with interest semi-annually, on the first days of July and January, at the rate of 8 per cent. per annum, and are secured by a mortgage executed to the Farmers' Loan & Trust Com-pany as trustee. The contract, after reciting that the Chicago, Burling-ton & Quincy Railroad Company has made a contract with the Chicago & Iowa Railroad Company for a joint transportation business, by the terms of which there will accumulate in the hands of the former "a large amount of money" belonging to the latter, and that the latter is "desirous of providing a fund to secure the payment and ultimate re-demption" of a certain mortgage, and the bonds issued under it, con-tains the following conditions:

"Now, therefore, it is hereby mutually agreed by and between the parties that the said Chicago, Burlington & Quincy Railroad Company are hereby au-thorized to retain in their hands all the money which may be earned in said joint business, and on the first days of April and October in each year pay over all moneys so accumulated in their hands as belong to said Chicago & Iowa Railroad Company to the Farmers' Loan & Trust Company of the city of New York as trustee, to be used by it as provided in said mortgage, for the purpose of providing a sinking fund for the redemption of said mortgage bonds. This contract shall be construed to be not only a contract between the parties, but also a contract between the parties and the holders of said bonds. This contract is to be in force for thirty years, or for so long a time as will be sufficient to provide a fund large enough to redeem all of said bonds, after which time the earnings from the joint business shall be paid over to the said Chicago & Iowa Railroad Company."

There is no provision in the mortgage respecting a sinking fund, and it is obvious from this circumstance, and from some other recitals in the agreement which have no application to the present mortgage, that the agreement was not originally executed with any reference to the mort-gage which secures the bonds in suit, but was intended to carry out some understanding of the parties relative to a different mortgage created or to be created by the Chicago & Iowa Railroad Company. This circum-stance is unimportant, however, inasmuch as the agreement was printed

upon the bonds in controversy. Being placed there, the inference is irresistable that it was intended by the parties, so far as applicable, to refer to those bonds; and the only question is as to its legal effect as qualifying the contract between the Chicago & Iowa Railroad Company and the bondholders, evidenced by the bonds themselves.

The contract does not contain any express undertaking on the part of the Chicago, Burlington & Quincy Railroad Company. It is silent as to the time when the bonds are to be paid or redeemed, silent as to the scheme of the sinking fund, silent as to the duties of the trustee, and silent as to any rights or obligations on the part of the bondholders. Where an instrument is thus inartificially expressed, or when its terms are so obscure, imperfect, or ambiguous as to leave its true meaning in doubt, the court must endeavor to ascertain the intention of the parties by a resort to the language employed, the subject-matter, and the surrounding circumstances. *Barreda* v. *Silsbee*, 21 How. 161; *Nash* v. *Towne*, 5 Wall. 689; *Hudson Canal Co.* v. *Pennsylvania Coal Co.*, 8 Wall. 276; *Moran* v. *Prather*, 23 Wall. 492. But, while previous and contemporary facts may be considered to ascertain the subject-matter of the contract and the meaning of terms, they cannot be given effect to modify the plain language used. *Maryland* v. *Railroad Co.*, 22 Wall. 105; *Brawley* v. *U. S.*, 96 U. S. 168. There are no extraneous circumstances alleged in the bill or answer which are of any value to assist the court in placing itself in the situation of the parties, and the contract must be interpreted, therefore, without any material aid or light from that source.

Although the agreement does not contain any express promise on the part of the Chicago, Burlington & Quincy Railroad Company to apply the moneys which may arise in its hands to the purposes of the trust, but by its terms merely authorizes that company to retain and pay over the moneys to the trustee, some reciprocal obligation on the part of that company is to be implied from its signature to the contract. It is plain that both parties intended that a fund should be created and lodged in the hands of the trustee for the payment and redemption of the bonds; that this fund should be kept by the trustee in order that it might be so applied; and that the holders of the bonds should have the benefit of the security of such a fund, and become parties to the contract. The clause by which the Chicago & Iowa Company agrees that the Chicago, Burlington & Quincy Company shall retain and pay over to the trustee the moneys which are thus to constitute the trust fund is of no efficacy, unless the Chicago, Burlington & Quincy Company assumes the obligation of doing so, and should therefore be construed as importing a promise on the part of the latter to retain and appropriate the moneys in the manner specified. *Pordage* v. *Cole*, 1 Saund. 319; *Barton* v. *McLean*, 5 Hill, 256; *Baldwin* v. *Humphrey*, 44 N. Y. 609; *McIntyre* v. *Belcher*, 14 C. B. (N. S.) 654; *Bealey* v. *Stuart*, 7 Hurl. & N. 753.

It is apparent from the reference in the agreement to the sinking fund that the two railroad companies originally intended to create a sinking fund, and provide thereby for the payment and redemption of the bonds, and they intended to incorporate into the mortgage the scheme and plan

of administration of this fund. Had the provisions which were thus in the minds of the parties been inserted in the mortgage, the purchasers of the bonds would have been fully informed of their purport. As it is, however, the reference to the sinking fund does not aid the agreement in defining how or when the bonds are to be paid or redeemed. Sinking funds are created with provisions for the accumulation and disposition of the moneys of which they consist, as various as are the preferences of those who originate them. The term "sinking fund" merely signifies a fund created for extinguishing or paying a funded debt. *Ketchum* v. *City of Buffalo*, 14 N. Y. 379. When the bonds are to be paid or how,—whether they are to be called in and retired according to lot, whether they are all to be purchased when the fund is sufficiently large, or whether the fund is to be kept by the trustee, and applied to the payment of the bonds at maturity,—is left wholly to conjecture.

The agreement between the Chicago & Iowa Company and the bondholders is to be collected from the terms of the bond and the provisions of the contract indorsed upon the bonds. Both instruments are to be read together as qualifying and supplementing each other. By the contract the Chicago & Iowa Company offers, and the bondholders (by accepting the bonds) accept, the undertaking of the Chicago, Burlington & Quincy Company to pay a trustee named, at semi-annual periods, such indefinite sums of money as may accrue in the hands of the Chicago, Burlington & Quincy Company belonging to the Chicago & Iowa Company, such sums to be used by the trustee for providing a sinking fund for the payment and ultimate redemption of the bonds, the payments to be made by the Chicago, Burlington & Quincy Company to the trustee until a sufficient sum is created for that purpose. By the terms of the bond the Chicago & Iowa Company are to pay interest on the bonds semi-annually until the principal sum matures, and are to pay the principal January 1, 1900. In legal effect this is a provision that the holder shall not be required to accept the principal before January 1, 1900. *Brown* v. *Cole*, 14 Sim. 427; *Saunders* v. *Frost*, 5 Pick. 259, 266.

The bond further provides that, in case of six months' continued default in the payment of interest, the principal shall become due, at the option of the trustee named in the mortgage, unless a majority in interest of the bondholders instruct the trustee to waive the default or annul his action. Although the only duty imposed in terms upon the trustee is to use the moneys paid to him as a sinking fund for the payment and ultimate redemption of the bonds, the implied duty is plainly incumbent upon him to exercise the diligence always required of a trustee in the custody and investment of trust funds. He is a trustee for both the Chicago & Iowa Company and the bondholders. He is not to pay the interest on the bonds as they mature, but he is to pay and redeem the bonds ultimately. The Chicago & Iowa Company is the primary obligor for the payment of both the interest and principal of the bonds. The Chicago, Burlington & Quincy Company is a surety to the extent of the moneys that come to its hands. If the Chicago & Iowa Company pay the bonds, the trust ceases, and the trustee must then pay over the fund

to that company.   If the Chicago & Iowa Company pays the interest when it matures, it has until January 1, 1900, to pay the principal.   If it makes default, and the bondholders elect to treat the whole principal as due, it will no longer have any interest in the trust fund, and the sole duties of the trustee will consist in protecting the rights of the bondholders, and securing to them the fund created by the contract.   If, before the day named for the payment of the principal of the bonds, a sufficient sum accumulates in the hands of the trustee to pay the principal, the bondholders are nevertheless entitled to their semi-annual interest, at the rate of 8 per cent., until the principal becomes due.   There is no language in the contract which authorizes the trustee to pay the bond, without the consent of the bondholders, at an earlier day than the time when the principal matures, or which requires the bondholder to receive payment.

The argument for the complainants is that, when the parties agreed that a fund should be created for the payment and redemption of the bonds, they necessarily contemplated that it should be applied to that purpose as soon as it was of sufficient amount to effect the object in view.   This argument overlooks the recital in the contract that the fund is to be provided for the payment and *ultimate* redemption of the bonds, a recital which is inconsistent with the hypothesis that the parties contemplated a payment before the mortgage should become due.   Strictly, there can be no redemption until the mortgage is due, (2 Jones, Mortg. § 1052;) and the use of the word "ultimate" would seem to indicate that the fund was not expected to be available for the strict redemption of the bonds at maturity.   But the argument is unsound because the implication suggested is controlled by the express stipulation of the parties, contained in the bonds themselves, that the bondholders are to have their semi-annual interest for 30 years, and by the condition implied by law that they are not to be required to accept the principal sum until January 1, 1900.

If it were necessary, the rule of interpretation might be invoked that, where doubt exists as to the construction of an instrument prepared by one party, upon the faith of which the other party has parted with his money, that construction shall be adopted which will be favorable to the latter.   *Noonan* v. *Bradley*, 9 Wall. 395.   But it is not necessary to rely upon this rule of construction of contracts.   When the contract was prepared, it was to be indorsed upon bonds about to be offered for negotiation to the public.   It is not to be supposed that the Chicago & Iowa Company designed to ingraft conditions upon the bonds which would make them less desirable for the class of investors who purchase such securities, and thus impede their negotiation upon the best terms.   Such would indubitably be the effect of the contract if it were to be read as is now insisted by the complainants, because it would require the bondholders to accept payment, and surrender their investments, at a time which they could not foretell, and depending wholly upon the contingencies of the traffic contract between the two railroad companies.

The language of the contract is consistent with a purpose on the part

of the Chicago & Iowa Company to offer to those willing to invest in the bonds the security of the fund which might be expected to arise in the hands of the Chicago, Burlington & Quincy Company, as an inducement additional to the security of the mortgage. This is the fair and natural understanding of the language which would be suggested to the mind of a purchaser. The contract should therefore be construed as intended to strengthen and fortify the bonds, and not as intended to require the bondholders to surrender their investment at an earlier time than is provided for in the bonds.

The motion for an injunction is denied.