[S. F. No. 7518.    In Bank.—April 1, 1918.]

## CALIFORNIA GAS AND ELECTRIC CORPORATION (a Corporation), et al., Appellants, v. UNION TRUST COMPANY OF SAN FRANCISCO (a Corporation), Respondent.

MORTGAGES—SINKING FUND—CONSTRUCTION OF PROVISIONS FOR CREATION OF—PAYMENTS.—Where a corporation, the entire property of which was made up of properties acquired from subsidiary corporations, subject to certain mortgages, assumed and agreed to perform all the obligations of the subsidiary corporations, including payment of their mortgages, and thereafter executed a first mortgage securing an existing bond issue, and a subsequent mortgage securing an authorized bond issue, designated as the "Unifying and Refunding Mortgage," in which its prior mortgage and those of the subsidiary corporations were designated by the term "underlying mortgages," and the "unifying and refunding" mortgage contained a covenant to "create and maintain" a "sinking fund" by paying annually, to the trustee named in the mortgage, certain sums of money, which were to be applied by the trustee to the "purchase, redemption, and payment of the underlying bonds, and of the bonds issued under" the unifying and refunding mortgage, but the mortgagor was given the right to deduct from any of the required annual payments all sums paid by it during the preceding year *"on account of* the sinking funds *required* to be *created and maintained"* under the underlying mortgages, several of which latter mortgages contained provisions requiring the creation and maintenance of sinking funds by the mortgagors, some, by the payment of fixed annual sums, and some by the payment of percentages of their earnings—the corporation was not entitled to deduct from the annual payments to the sinking fund of such unifying and refunding mortgage any sums except such as were paid on account of the principal sums required to be paid by the mortgagors into such "sinking funds" as were explicitly provided for in the various underlying mortgages, and, by the terms thereof, required to be created and maintained.

ID.—REDEMPTION OF UNDERLYING BONDS—SINKING FUND NOT CREATED BY.—A covenant by the mortgagor in one of such underlying mortgages to redeem annually during a certain number of years a certain number

CLXXVIII Cal.—5

of the bonds thereby secured, before the face date of maturity, was not a provision for the creation or maintenance of a "sinking fund" or for the creation or maintenance of any "fund" of any kind, and the mortgagor under the "unifying and refunding" mortgage was not entitled to deduct from the required payments into the "sinking fund" thereof any moneys expended by it in the redemption of any such underlying bonds.

ID.—INTEREST PAID ON BONDS HELD IN UNDERLYING SINKING FUNDS— NOT PAYMENTS "ON ACCOUNT OF" SINKING FUNDS.—Payments by the mortgagor under the "unifying and refunding" mortgage of interest on underlying bonds which were held and "kept alive" in the sinking fund of several of the underlying mortgages, were attributable to its covenant that it would pay the interest on all underlying bonds as and when it became due and payable, and were not payments *on account of* sinking funds required to be created and maintained" by the terms of the underlying mortgages, and it was not authorized to deduct such interest payments from the annual payments to the sinking fund of the "unifying and refunding" mortgage.

ID.—INTEREST ON UNDERLYING SINKING FUND INVESTMENTS.—Interest paid by a successor of the mortgagor in the "unifying and refunding" mortgage on bonds (which were not underlying bonds) in which some of the sinking funds of underlying mortgages had been invested and which bonds, together with the interest thereon, the corporation paying the interest had assumed and agreed to pay, were not payments "on account of" the underlying sinking funds, but were attributable to the independent covenant of assumption.

ID.—PROFITS ON UNDERLYING SINKING FUND INVESTMENTS.—Where the trustee under some of the underlying mortgages had purchased, as investments of the sinking funds of some of those mortgages, bonds of other corporations at less than par, and the bonds so purchased were afterward redeemed by the makers thereof at par and accrued interest, the profits thus realized for the sinking funds of the underlying mortgages were not "payments" "on account of" the sinking funds of the underlying mortgages.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Seawell, Judge.

The facts are stated in the opinion of the court.

Wm. B. Bosley, for Appellants.

Heller, Powers & Ehrman, and James L. Robison, for Respondent.

MELVIN, J.—Plaintiffs sued under the provisions of section 1050 of the Code of Civil Procedure, to obtain a decree determining certain adverse claims made by defendant as trustee so created by the provisions of a certain "Unifying and Refunding Mortgage." Dissatisfied with the amount of the defendant's recovery under the terms of the judgment, plaintiffs appeal, asking for a modification of the said judgment. The appeal is upon the judgment-roll alone, and all of the questions involved in the controversy pertain to and involve an interpretation of the "sinking fund" provisions of the "Unifying and Refunding Mortgage."

In 1908, California Gas and Electric Corporation executed to defendant as trustee its "Unifying and Refunding Mortgage" supporting a bond issue of forty-five million dollars. This mortgage was subordinate to and subject to the lien of a prior mortgage executed by the California Gas and Electric Corporation and seventeen other earlier mortgages given respectively by predecessors in estate of the California Gas and Electric Corporation to secure the payment of bonds, the face value of which outstanding and unmatured then amounted to more than thirty million dollars. In the briefs these prior mortgages and bonds are respectively designated by the adjective "Underlying," and we shall employ that term in this opinion.

In section 1 of article nine of the unifying and refunding mortgage the California Gas and Electric Corporation agrees, among other things, that it "will create and maintain a sinking fund, to be specially applied to the purchase, redemption, and payment of the underlying bonds and of the bonds issued under this Indenture on or before their maturity, and for that purpose will pay to the Trustee on the first day of November, 1912, and on the same day in each and every year thereafter to and including 1916, the sum of $450,000." There is, however, the following proviso in article nine, most important in view of the fact that all of the questions involved in this litigation arise from disagreements as to its proper interpretation: "The California Corporation shall have the right to deduct from any such annual payment to be made by it on account of the sinking fund herein provided all sums paid by it during the year next preceding the date when such sinking fund payment is payable, on account of the sinking funds required to be created and

maintained under the respective mortgages securing the payment of the underlying bonds, upon filing with the Trustee satisfactory receipts or other evidence showing the making of such payments.''

The unifying and refunding mortgage also contained a separate and distinct covenant that the California Gas and Electric Corporation would pay all underlying bonds and the interest thereon.

At the time of the execution of the unifying and refunding mortgage there were eight of the underlying mortgages containing explicit and undoubted requirements for the creation and maintenance of sinking funds. Of these eight, two have been satisfied and released. Two of the remaining six mortgages containing unequivocal provisions for sinking funds were so treated with reference thereto that no controversy arises over them. In each of the four remaining underlying mortgages were provisions by which the mortgagor covenanted that it would make an annual payment of a specified amount into a sinking fund; that money in this fund might be applied by the trustee to the redemption of bonds secured by the mortgage; that bonds so acquired should be deemed to be outstanding and continue to bear interest; that such interest should become part of the sinking fund; that the trustee might, upon certain conditions, invest the sinking funds in securities other than those covered by the mortgage; and that the income derived from such investments in outside securities should become a part of the sinking fund.

The first mortgage of the Sacramento Electric Gas and Railway Company (one of the underlying mortgages) contained a provision that required the mortgagor during a period of years including that covered by the controversy herein, to call in each year or to provide the trustee with funds to purchase twenty of the bonds of the par value of one thousand dollars each. These were to be immediately canceled. One of the controversies here involved is the assertion of appellants and the denial of respondent that this provision really amounted to a requirement for the creation and maintenance of a sinking fund.

None of the other underlying mortgages contains any provision for a sinking fund.

The trustee named in all of the underlying mortgages with which we are concerned here was the Mercantile Trust Company of San Francisco.

On or about January 28, 1908, California Gas and Electric Corporation conveyed to its coplaintiff herein, Pacific Gas and Electric Company, all of its property, and the latter assumed all of the former's obligations. Hereafter in this opinion we shall refer to the latter corporation as "Pacific Company" and will omit the qualification, understood in each instance, that it was acting as successor of its grantor.

This litigation is confined to transactions during the two years from November 1, 1911, to October 31, 1913. During each of these years the Pacific Company paid four hundred and fifty thousand dollars to defendant under the terms of its trust, and this action was for credits against said payments on account of alleged payments into sinking funds of trustees administering underlying mortgages. During the first of these years the Pacific Company paid large sums as interest on underlying bonds to the Mercantile Trust Company, including $79,515 interest upon bonds held in the sinking funds created pursuant to four of the mortgages which we have described above. And in the following year the amount of interest paid by the Pacific Company on bonds held in these sinking funds was $87,075. It is asserted by the Pacific Company and denied by respondent that these were payments "on account of sinking funds." Respondent insists that they were mere payments of interest under that part of the unifying and refunding mortgage requiring the Pacific Company's predecessor to pay interest on all bonds included within the purview of the underlying mortgages.

During each of said years the Pacific Company paid twenty thousand dollars to the trustee, Mercantile Trust Company, for the redemption and cancellation of bonds of the Sacramento Electric Gas and Railway Company. It is asserted by appellants and denied by respondent that these were likewise payments "on account of a sinking fund."

Another point of dispute arose as follows: After the execution of the unifying and refunding mortgage the Pacific Company acquired and assumed all the obligations of four other companies—San Francisco Gas and Electric Company, Pacific Gas Improvement Company, Mutual Electric Company, and Suburban Light and Power Company. These

four corporations had executed mortgages, and the trustee of some other underlying mortgages had invested part of their sinking funds in some of the bonds secured by the four mortgages. In paying the interest on the bonds of its acquired corporations the Pacific Company expended $8,842.50 the first year and $12,277.50 the second year in interest on bonds thus held in sinking funds provided for in underlying mortgages. These sums were claimed as a credit "on account of the sinking funds" required to be created and maintained in accordance with the underlying mortgages, but the respondent successfully maintained in the court below the proposition that the Pacific Company paid this interest solely in compliance with its later independent contract; that the transaction could have no possible connection with the unifying and refunding mortgage; and that no part was payment on account of the sinking funds of any of the underlying mortgages merely because some of the bonds of these newly acquired corporations had been taken into those sinking funds by way of investment.

During the year 1913 the Mercantile Trust Company held in the sinking funds of two of the underlying mortgages certain bonds of the San Francisco Gas and Electric Company, one of the four newly acquired corporations, said bonds having been purchased at a price below par. The Pacific Company, which had become liable for the full amount of these bonds and interest, redeemed them at a premium, paying the accrued interest also. In this way the trustee made a profit of $3,295.50 for the sinking funds, and appellants assert that they have a right to a credit of this sum "on account of" payments for the sinking funds of the underlying mortgages. In this contention they were also unsuccessful in the court below.

Counsel for the Pacific Company, with admirable conciseness, has reduced the matters at issue to four questions or propositions, and we will follow his arrangement in discussing the law which we deem applicable to the problems involved in this appeal. The first of these questions is substantially as follows: Does article XI of the first mortgage of the Sacramento Electric Gas and Railway Company, quoted in full in the findings, when given its true legal meaning, require the mortgagor to create and maintain a sinking fund? It is asserted that if this question be answered in the affirma-

tive, such reply will compel a deduction from the amount found due to the respondent the forty thousand dollars paid during the two years for purchase and cancellation of bonds of the Sacramento Company.

Without quoting at length from said article XI, it is sufficient to say that under it the Electric Company was required under a schedule covering many years to cause certain varying numbers of bonds to be paid off and canceled yearly by one of two methods—either by calling the bonds wanted and paying for them 103 per cent (that is to say, a three per cent premium) plus accrued interest, or by advertising for and buying the proper quota of bonds at a sum not to exceed 103 per cent. This, says counsel for appellants, amounts to a requirement that the mortgagor create and maintain a sinking fund. It is contended that the term "sinking fund" applies to any fund "created for extinguishing or paying a funded debt." (Citing *Chicago & Iowa R. R. Co.* v. *Pyne,* 30 Fed. 86; *Ketchum* v. *City of Buffalo and Austin,* 14 N. Y. 356; Bouvier's Law Dictionary.) While this definition is rather more circumscribed than the ordinary conception of the scope of the expression "sinking fund," even if we adopt it, we cannot see how the provision for gradual retirement of fixed numbers of bonds paid for not from a separate fund but by stated yearly purchases made from the general assets of the corporation amounts to the creation and maintenance of a sinking fund. The very idea of a "fund" involves a concept of a sum of money maintained in existence for some purpose—a supply hoarded and kept to be called on when needed. For example, we might cite the definition of a "fund" contained in the Century Dictionary and quoted by respondent as follows:

"A stock or accumulation of money or other forms of wealth devoted to or available for some purpose, as for the carrying on of some business or enterprise, or for the support and maintenance of an institution, a family, or a person: as, a sinking-*fund;* the *funds* of a bank or corporation; the Widows' and Orphans' *Fund,* etc."

But we need not enter into a lengthy discussion of the shades of meaning attributed by various lexicographers to the words "sinking fund," because it is clear that the qualifying language of section 1 of article nine of the unifying and refunding mortgage, describing the sinking funds

"to be created and maintained under the respective mortgages securing the payment of the underlying bonds," had reference to sinking funds so called in the said mortgages and *in terms* required to be maintained. If the purchase of so many bonds a year during given years, required under the terms of the mortgage of the Electric Company, may be called a "sinking fund," it is not one required to be maintained, because as soon as money to buy the bonds is appropriated it may be spent at once. There is no provision for holding the bonds for the accumulation of interest nor for reselling and reinvesting the proceeds by the trustee. Cancellation is the one fate for the bonds acquired, and cancellation is not "maintaining" a fund. The learned judge of the superior court correctly decided that appellants were not entitled to credit against their trustee for the forty thousand dollars expended in the purchase of bonds of the Sacramento Electric Gas and Railway Company.

The next point in controversy is in substantial effect as follows: Are appellants entitled, against their payments to defendant of four hundred and fifty thousand dollars annually, to credit for interest paid Mercantile Trust Company on underlying bonds held in sinking funds created and maintained in obedience to the provisions of underlying mortgages? It is undisputed that during the two years involved herein payments aggregating $166,590 were thus made. It is the belief of plaintiffs that these payments should not be considered as interest at all, but by way of performance of the obligations created by the sinking funds required to be maintained.

In this connection it is to be remembered that the California Gas and Electric Corporation had covenanted to pay punctually "or cause to be paid the interest on all such underlying bonds not acquired and deposited hereunder as and when such interest shall become due and payable, until all underlying bonds shall have been fully paid and discharged or shall have been acquired and deposited hereunder." This language is as direct, emphatic, and understandable as it could well be made. Under its terms, at least, the only excuses for omitting to pay interest on underlying bonds would be either full payment and discharge or acquisition and deposit with the trustee. This covenant which is now binding upon the other plaintiff makes no pro-

vision for escaping payments of interest upon bonds held in sinking funds created because of the terms of underlying mortgages, and it seems highly probable that if the parties to this contract had intended other credits for interest payments, they would have expressed such intention in the unifying and refunding mortgage itself.

The immediate predecessor of the unifying and refunding mortgage was the California Gas and Electric Corporation's general and collateral trust mortgage. The Mercantile Trust Company was trustee under this mortgage and occupied a similar function with reference to the mortgages underlying it. This general and collateral trust mortgage contained a provision requiring the California Gas and Electric Corporation to pay annually into the sinking fund, during the years here involved, two hundred thousand dollars. This fund was to be applied by the trustee (not by the mortgagor) to the redemption of the bonds of certain named corporations. The trustee was "authorized to apply said sinking fund to the redemption of said bonds and to make the necessary payments out of said sinking fund." There was the further provision in the general and collateral trust mortgage that "All moneys in said sinking fund not so used shall be invested by said Mercantile Trust Company in the purchase of bonds" [of the specified companies], "and the bonds of the party of the first part" [California Gas and Electric Corporation] "issued under this deed of trust." Then followed the sentence: "*All interest* or other income derived under this investment shall in like manner be invested as part of said Sinking Fund in accordance with the above conditions." The provision regarding the status of the bonds, immediately following the last quotation is as follows: "All bonds so purchased and acquired by said Mercantile Trust Company of San Francisco as provided in this article, together with the coupons thereto attached shall continue to be negotiable and said bonds shall be deemed outstanding hereunder and shall not be canceled and shall continue to bear interest, and the Mercantile Trust Company of San Francisco shall collect and receive the proceeds of the coupons paid thereon and add the same to the Sinking Fund and said bonds shall be held as existing obligations for the security of the outstanding bonds thereby secured."

In accordance with the mandate of the above-quoted provisions the trustee, the Mercantile Trust Company, as the court duly found, had purchased and placed in its sinking fund a part of the bonds issued under the same mortgage and a part of the bond issues of some of the companies mentioned in the general and collateral trust mortgage.

The court found with reference to the year 1911–12 (and the same is true except as to amount for the following year) that the Pacific Company paid to the Mercantile Trust Company "all the interest coupons appertaining to said underlying bonds which became due during that year, including the coupons appertaining to all the underlying bonds held in said sinking funds as well as all the coupons appertaining to all others of said outstanding underlying bonds." As respondent's counsel in their brief emphasize the fact to be, the Pacific Company *did not* pay the trustee *specifically* the interest on the underlying bonds held in the sinking fund, but paid the said trustee *all* the coupon interest on the whole outstanding issue. That such payments were not, as to any part of them, "on account of sinking funds" required to be created under the general and collateral trust mortgage is, we think, very clear. In virtually all of the mortgages herein involved, in which trust funds were required to be kept up, there were the two sources of income to the trustee, namely: Direct payments of money into the trust funds and the interest on the purchased bonds. That these two sources were not to be mingled by any sort of bookkeeping which would credit the mortgagor as having paid for one purpose when in reality it had expended the money for the other is emphasized by the circumstance that the trustee was given great latitude not only in the investment but in the sale of securities and reinvestment of the proceeds. It was expressly provided that the purchased bonds should "continue to be negotiable," should be "deemed outstanding," should "not be canceled," and that they should "continue to bear interest." The trustee was required to collect the proceeds "of the coupons paid thereon" and "add the same to the sinking fund." And such bonds were to be "held as existing obligations for the security of the outstanding bonds." The intent to require payment of *interest* on bonds held in the sinking fund, *as* interest and not as part of the other money payments directly into the fund, seems to us very

clear from the whole structure of the sinking fund requirement.

And if that be true of the California Corporation's own bonds it is even more evident in the case of the bonds of the other corporations held in the sinking fund for the general and collateral trust mortgage. Take, for example, the bonds of the Valley Counties Power Company. The Mercantile Trust Company was the trustee under the mortgage of the said Valley Counties Power Company. It had been administrating the office of such trustee when the general and collateral trust mortgage was executed; therefore, the California Corporation could not, if it had wished to do so, confer upon the Mercantile Trust Company, as trustee of the general and collateral trust mortgage, power to cancel any of the bonds of the Valley Counties Power Company. As trustee of the California Corporation it was authorized to purchase and it did acquire for the sinking fund bonds of the Valley Counties Power Company, but these remained in its custody as outstanding obligations bearing interest until redeemed or paid, without regard to any covenant in the unifying and refunding mortgage. If the Valley Counties Power Company itself had paid the interest on these, its own obligations, it could not have been said that the corporation was paying such interest on account of the sinking fund of the California Corporation. We can see no escape from the proposition advanced by respondent that the payment of this interest by the Pacific Company bore no relation to and had no connection with the fact that the bonds on which the interest was paid were held in the sinking fund of the California Corporation. The interest was paid under an obligation to pay interest on all the underlying bonds, no matter where they might be found.

It is contended that bonds held in the various sinking funds are "redeemed" in contemplation of law, and that, therefore, when it is provided that they shall be deemed to be outstanding and that the trustee shall collect the interest coupons for the sinking fund, the mortgagor's obligation to pay the sums specified in the interest coupons exists solely by reason of the maker's covenant contained in the sinking fund provisions of the mortgage and not by reason of the mortgagor's covenant to pay interest on the debt evidenced by its bonds. But by the very terms of the mortgage the bonds

are not to be regarded as redeemed. They are mere investment bonds and bear, so far as the payment of interest is concerned, the same relation to the corporation for which the sinking fund is.maintained as the bonds of an entirely alien corporation bought for the sinking fund would bear to the persons or corporations bound to pay interest on them. Bonds of any of those companies are no more redeemed, so far as the necessity for the payment of interest is concerned, by the fact that the trustee purchased them for the sinking fund than would United States government bonds be considered as redeemed when bought for like purpose.

In support of his contentions counsel for appellants cites *Bank for Savings* v. *Grace,* 102 N. Y. 313, [7 N. E. 162], *Brooke* v. *City of Philadelphia,* 162 Pa. St. 123, [24 L. R. A. 781, 29 Atl. 387], and *Wilds* v. *St. Louis, Alton & Terre Haute R. R. Co.,* 102 N. Y. 410, [7 N. E. 290]. In the first of these cases it was held that ''city stock'' of the city of New York, held by the commissioners of the sinking fund, is not an indebtedness of the city within the meaning of the constitution prohibiting such a city whose present indebtedness exceeds ten per cent of the assessed valuation of its real estate subject to taxation from becoming indebted to any further amount. It was decided, in short, that the city stock so held was not a debt which the municipality could be called upon to pay. But it was held that such stock was subject to payment of interest which the commissioners were to add to the sinking fund. In the Brooke case a question precisely similar was decided. In the other New York case the court was considering a sinking fund into which the railroad company was to pay twelve thousand five hundred dollars twice a year out of its net earnings. With such money and the interest accumulations thereon the trustees were to buy first mortgage bonds so long as they could be purchased for not exceeding ten per cent beyond par, the bonds so purchased to remain in force and interest thereon to be paid by the company. In case of inability to buy bonds below the prescribed rate the money was to ''remain at interest until bonds can be purchased at public or private sale, at such rate; and no further payments shall be payable to the said sinking fund till the money so remaining in the said fund can be used in purchasing said bonds at such rate or under, when such payments of twelve thousand five hundred dol-

lars semi-annually shall be resumed." The bonds went above 110 per cent and the semi-annual payments were thereupon discontinued, but the company intending to continue to pay interest upon bonds held by the trustees in the sinking fund, a holder of preferred stock objected to that course and brought the suit. The court held that the action might not be maintained and that the duty of payment of interest on bonds in the sinking fund must continue until the maturity of the mortgage. We cannot see that the citations support the position of appellants.

The next argument advanced by appellants is that sums aggregating $8,842.50 in one year and $12,277.50 in the other which were paid by Pacific Gas and Electric Company to Mercantile Trust Company as interest on bonds of San Francisco Gas and Electric Company, Mutual Electric Light Company, Pacific Gas Improvement Company, and Suburban Light and Power Company held in the sinking funds provided for in certain underlying mortgages were in fact and in legal effect made "on account of the sinking funds required to be created and maintained under the respective mortgages securing the payment of the underlying bonds."

It appears from the findings that Mercantile Trust Company, as trustee under the mortgages of the Valley Counties Power Company and California Central Gas and Electric Company, held in the sinking funds certain bonds of San Francisco Gas and Electric Company, Mutual Electric Light Company, Pacific Gas Improvement Company, and Suburban Light and Power Company which were not underlying bonds but which Pacific Gas and Electric Company, as successor of the makers thereof, had assumed and agreed to pay. The last-named corporation did pay interest on such bonds, which was added by the Mercantile Trust Company to the sinking funds provided for in the mortgages of the Valley Counties Power Company and the California Central Gas and Electric Company. It is contended that the payment of this interest was, in legal effect, a payment made by Pacific Gas and Electric Company on account of the sinking funds maintained under the mortgages of Valley Counties Power Company and California Central Gas and Electric Company, which were included in the mortgages securing the payment of underlying bonds. With this contention we cannot agree. It is to be remembered that the Pacific Com-

pany had covenanted directly with the makers of the four mortgages to assume the payment of the bonds and interest thereon. By the four mortgages we mean those of the San Francisco Gas and Electric Company, Mutual Electric Light Company, Pacific Gas Improvement Company, and Suburban Light and Power Company. The other plaintiff, California Gas and Electric Corporation, had not covenanted to pay the bonds of any of the four companies. If the several makers of these bonds had paid the interest, as it became due, to the Mercantile Trust Company, they would have paid it without any care whether or not the bonds were held in the sinking funds of the Valley Counties Power Company or the California Central Gas and Electric Company. Their payments would have been to the purchaser of the bonds. Therefore, the payments made by the Pacific Company were made in the liquidation of obligations assumed on its own account and not as a successor of its coplaintiff, the California Corporation. These payments were made in pursuance of an obligation assumed long subsequent to the execution of the unifying and refunding mortgage. We can see nothing in the opinion in the *Union Pacific R. R. Co.* v. *United States,* 99 U. S. 700, [25 L. Ed. 496], cited by appellants, which contradicts in any way our conclusion upon this branch of the case.

By their final contention appellants insist that profits realized by Mercantile Trust Company from the redemption by Pacific Company, one of the plaintiffs herein, of certain bonds of San Francisco Gas and Electric Company then held in the sinking funds of the mortgages of Valley Counties Power Company and California Central Gas and Electric Company and which had been purchased for those sinking funds at less than par and accrued interest were, in legal effect, payments "on account of sinking funds required to be created and maintained under the respective mortgages securing the payment of the underlying bonds."

The argument is that the legal effect of the transactions whereby these bonds were redeemed for more than par was as if the profits in the first instance had been made by the Pacific Company and paid to the Mercantile Trust Company on account of the sinking funds. But the bonds purchased at a premium were not underlying bonds. The obligation of plaintiff Pacific Company regarding their payment arose

subsequently to the execution of the unifying and refunding mortgage and bore no relation thereto. In redeeming these bonds the Pacific Company did not act as a successor of its coplaintiff. We can see no logical reason for deducting the amount of this profit from the payments required to be made to the defendant herein, as trustee, for the maintenance of the sinking fund which defendant was required to maintain by the unifying and refunding mortgage.

The judgment is affirmed.

Wilbur, J., Victor E. Shaw, J., *pro tem.*, Richards, J., *pro tem.*, and Angellotti, C. J., concurred.