[Civ. No. 4738.   Fourth Dist.   Jan. 4, 1954.]

JIM NIKOLAUS, Respondent, v. FRANK G. HOWE,
Defendant; OLIVE A. BURNEY et al., Appellants.

Andrew J. Copp, Jr., and H. Dexter McKay for Appellants.

Willis Smith for Respondent.

MUSSELL, J.—Plaintiff brought this action to recover for
services rendered to defendants in hauling tungsten ore from
Fallon, Nevada, to Bishop, California.   His original com-
plaint stated a cause of action on a book account and at the

conclusion of the presentation of plaintiff's evidence, he was permitted to file an amended complaint to conform to the proof. In the second cause of action therein it was alleged that the defendants were copartners engaged in the business of mining under the firm name and style of Red Top and Red Ant Mining Company, a copartnership; that between January 4 and February 13, 1952, the defendants and each of them became indebted to plaintiff in the sum of $3,281.51 for services rendered to said defendants, at their special instance and request, for the hauling of ores and materials; that defendants promised to pay plaintiff said sum and that it has not been paid. The trial court rendered judgment against the three named defendants and defendants Burney and Moreno appeal.

On or about November 26, 1951, defendant Howe, who was the sole owner of a contract for the purchase of six mining claims in Nevada, entered into three written agreements with defendants Burney and Moreno in which Howe agreed to advance $6,500, Burney $5,800 and Moreno $2,000, all to be used in enabling Howe to complete the payments under his contract for the purchase of said claims, for which advances Howe was to receive 45 per cent interest, Burney a 40 per cent interest and Moreno a 15 per cent interest in the ownership of said mining claims and purchase contract. The parties agreed to enter into a partnership agreement covering the percentages to each. One of the agreements was in the form of a certificate of limited copartnership agreement prepared in accordance with the provisions of section 15502 of the Corporations Code. This instrument was not filed and recorded because defendants Burney and Moreno refused to acknowledge it before a notary public. The transfers of interest in the purchase contract and in the mining claims were never consummated.

Defendant Howe testified that he first talked with plaintiff about hauling ore on December 28, 1951; that "I told him that myself and Mr. Ernest Moreno and Mrs. Burney were associated in a mine over east of Fallon, Nevada; that we had some ore on the dump and that we wanted to haul that ore and wondered if he would be interested in hauling and he said he would." I said "Now as to the grade of the ore, I have an engineer out in the car here and I also have one of my associates and you can go out and see them and talk to them." He said "Allright, we will go out and talk to them"; that he then introduced plaintiff to defendant Moreno

and the engineer, Mr. Rhodimer; that he told Moreno that plaintiff had agreed to haul the ore for $12 per ton; that later the same day after he had gone to Bishop with Moreno, another conversation was had with plaintiff at which defendant Moreno was present; that he there told Mr. Nikolaus that Mr. Brown had agreed to mill the ore and that the deal they had made for hauling it was satisfactory to them and that the deal was on; that Moreno was "in accord with the whole thing"; that all that was said at this conversation as to the payment for plaintiff's services was that he might have to wait for his money for a period of time while they were selling the ore; that he had a conversation with Moreno on January 4, 1952, in which Moreno stated that he had called plaintiff and that a truck would be there the following morning; that up to that time plaintiff had not hauled any ore; that he telephoned Mrs. Burney on December 28, 1951, and told her that they had a hauler and that "he would haul it for $12.00 a ton and she said that was fine"; that on November 28, 1951, he had a conversation with Mrs. Burney in which he told her that they would have to have a hauler to haul the ore; that he had previously talked to her about entering into the mining business; that they entered into a joint venture and that they were engaged in business together on December 28, 1951; that thereafter they talked about hauling the ore several times; that he did not work in the mine but that Moreno was in charge and Mrs. Burney was jointly interested with them; that "she okeyed a 100% Mr. Moreno having charge of the hauling of the ore."

Plaintiff testified that on December 28, 1951, Howe told him that he represented Mrs. Burney and Mr. Moreno; that he was then introduced to Moreno and that Howe told Moreno that he (plaintiff) was willing to haul the ore for $12 per ton; that Moreno told plaintiff what would constitute the loading and what would be required; that Howe stated that he had contacted the milling corporation and that they were willing to run the ore and take the milling charges out of it; that he then asked if plaintiff would be willing to do that; that plaintiff said he would if there would not be too much delay and that it would be agreeable provided he did not have to wait too long for his money; that he had to be assured of payment; that nothing was said to the effect that if the proceeds were not sufficient he would not be paid.

Bernice Morris, plaintiff's bookkeeper, testified as to the various entries in the account which was kept for "Frank

Howe Associates'' and which showed the deliveries of the ore involved, the price charged, and the amount due plaintiff. She stated that Moreno was introduced to her as an associate of Howe and that Moreno ''acknowledged it''; that Moreno made the loading arrangements; that she called the owner of the mine in Nevada and found that a substantial payment had been made on the property by Frank Howe and Mrs. Burney and was informed that they were a partnership; that they were buying the mine and had ''made enough of a payment that they should be responsible''; that she made this investigation before they started to haul the ore.

Defendant Olive Burney testified that on November 26, 1951, she invested $5,800 in the mining enterprise and carried on her negotiations with defendant Howe; that she found out that ore was being hauled on or about January 6, 1952, but did not find out that plaintiff was hauling it until January 23, 1952; that some time in November, 1951, she went with Howe to Fallon, Nevada, to get a hauler and on other trips discussed haulers with Howe; that in February, 1952, she called the mill manager and told him that she was supposed to have 40 per cent of the proceeds of the ore from the mine; that she first deposited money in the mining venture on November 26, 1951, and that she paid the money to develop the mine and get it started.

Defendant Moreno testified that he was a miner; that on or about December 28, 1951, he was introduced to plaintiff; that he helped the loader pick up the ore and put it in the trucks and worked at the mines approximately 21 days; that Mrs. Burney was present when he was instructed by Howe to go up to the mine and work.

The trial court found that the allegations in plaintiff's second cause of action were true and that defendants became indebted to plaintiff in the sum claimed for services rendered to defendants at their special instance and request; that they promised to pay the same and that no part of it had been paid. The evidence is sufficient to support these findings.

■ Where, as here, we are confronted with the question of the sufficiency of the evidence our only duty is to determine whether there is any substantial evidence, contradicted or uncontradicted to support the findings and judgment. (*Anglin v. Conway*, 41 Cal.2d 683, 688 [263 P.2d 1].) ■ Defendant Howe acted with implied authority of defendants Burney and Moreno to bind them with the obligations of the hauling contract. It clearly appears that plaintiff was employed by

defendant Howe as representing the remaining defendants; that they knew of his employment and knew that he was hauling the ore; that defendant Olive Burney, when informed by Howe that he had a hauler who would haul the ore for $12 per ton, said "That was fine"; that defendant Moreno actually directed the loading operations, defendants accepted the benefit of plaintiff's services and are obligated to pay for them. (6 Cal.Jur. 23.) The defendants were engaged jointly in mining the premises involved. The employer-employee relationship between defendants and plaintiff was established irrespective of whether a partnership existed as between the defendants, and since we have reached this conclusion, it is not necessary to determine the question of the sufficiency of the evidence to support the trial court's finding that the defendants were copartners.

Defendants argue that Howe's promise to pay hauling charges was subject to a condition that they be paid out of proceeds derived from the milling of the ore hauled. However, there was no agreement that plaintiff would not be paid unless the proceeds from the ore were sufficient for that purpose. Plaintiff informed Howe when asked if he would be willing to take his charges out of the ore that it would be agreeable if there would not be too much delay and stated that he had to be assured of payment. ██ As was said in *Bartholomae Oil Corp.* v. *Oregon Oil etc. Co.,* 106 Cal.App. 57, 64 [288 P. 814]:

"When the consideration for labor or materials is definite and certain, but the time for the payment thereof is uncertain or dependent upon the happening of an event which fails through no fault of the contractor, the consideration does not fail, but becomes due within a reasonable time. (21 R.C.L. 11, sec. 5; *Rosenheim* v. *Houze,* 179 Cal. 309 [176 Pac. 456]; *Wallace* v. *Carlin,* 92 Cal.App. 31 [267 Pac. 596].)"

Judgment affirmed.

Barnard, P J., and Griffin, J., concurred.