[Sac. No. 7174. In Bank. May 15, 1962.]

ORA MAE KEENE, Plaintiff and Appellant, v. CLARENCE W. KEENE, Defendant and Respondent.

James G. Changaris, Thomas A. Wahl and Francis T. Cornish for Plaintiff and Appellant.

Pugh & Webster, Stanley Pugh and Donald B. Webster for Defendant and Respondent.

SCHAUER, J.—Plaintiff appeals from a judgment for defendant in an action for divorce and to impress a trust upon defendant's property with respect to the proceeds of an alleged joint venture or partnership between defendant and herself.

Plaintiff contends that under our decision in *Vallera* v.

*Vallera* (1943) 21 Cal.2d 681 [134 P.2d 761], a woman who cohabits with a man knowing that they are not validly married is entitled to an interest in the property acquired in the latter's name during the period of unwedded cohabitation ''to the extent the woman renders services not included in the usual services of a housekeeper, cook and homemaker. . . .'' We have concluded that the contention cannot be sustained and hence that the judgment should be affirmed.

The complaint is stated in two counts. In the first plaintiff alleges that the parties were married in 1939 in Sun Valley, Idaho, and separated in 1956 in California; that she and defendant had acquired certain community property; and that defendant had been guilty of cruelty towards her. She prays for a divorce and for a division of the alleged community property.

Responsive to this count the trial court found that plaintiff and defendant never entered into a marriage, either common law or statutory, and never acquired community property of any kind. The court further found that defendant had been married to one Nadine Keene until April 3, 1939; that ''between the year 1938 and the year 1956, plaintiff and defendant did at various times and places in the State [of] California and in other states cohabit together, but that said cohabitation ceased in the year 1956''; and that ''the cohabitation of the parties was at all times based solely upon a meretricious relationship existing between the parties.'' Plaintiff does not challenge these findings, each of which is supported by substantial evidence.

In the second count of the complaint plaintiff alleges that during the period from 1938 to 1956 she and defendant owned and operated, as joint venturers or partners, certain ranch properties and other businesses; that she devoted her entire time and effort to the improvement and furtherance of such properties and businesses; and that because of a confidential relationship between the parties plaintiff relied on defendant's representations that he would share with her in all of the profits realized. Plaintiff prays that she be adjudged the owner of an undivided one-half interest in the designated property and that defendant be deemed to hold such interest in trust for her.

The evidence shows that defendant had owned the subject ranch property in Butte County for some 15 years before the inception of his relationship with plaintiff and that it was substantially improved and stocked with domestic animals. In

1946 defendant sold the ranch and its stock, and from then until 1956 (the year in which the parties separated) engaged in the real estate and furniture businesses or spent his time with plaintiff travelling about the country for pleasure.

The trial court found, and plaintiff does not challenge the sufficiency of the evidence to support the finding, that "plaintiff and defendant did not at any time operate the ranches referred to in the complaint, or any other property, as joint venturers or partners." In particular, the court found that "plaintiff had no interest in said ranch [in Butte County] at the time of said sale [in 1946] and that the same was the sole and separate property of defendant . . . and that the proceeds of said sale belonged to said defendant alone"; and that defendant "did use the proceeds of said sale to purchase certain other properties in the State of California, but that the same were not purchased by plaintiff and defendant as partners or joint venturers, . . . but the same were purchased by defendant as an individual dealing with his own separate property, . . ."

Responsive to the allegations of reliance upon a confidential relationship, the court found that "at no time during said period of cohabitation, . . . or at any time before or after said date, were there any confidential or business relations between plaintiff and defendant"; that "It is not true that defendant at any time took title to any property with the intention or for the purpose of depriving plaintiff of any interest to which she was entitled therein"; and that "defendant at no time made any representation, promise or agreement that he would operate any business whatever or own any property whatever as a partner or joint venturer with plaintiff; and further that plaintiff did not at any time rely upon any representation claimed to have been made by defendant with regard to plaintiff's having or acquiring any interest in property owned or acquired by defendant, nor did plaintiff rely upon any purported relationship of trust or confidence between plaintiff and defendant." Each of these findings, supported by substantial evidence, is unchallenged by plaintiff.

Having concluded that all of the property standing in defendant's name at the time of trial was his sole and separate property and that plaintiff had established no interest therein,[1] the court rendered judgment for defendant.

---

[1] At the start of trial the parties stipulated that the issue would first be limited to whether plaintiff was entitled to anything under the theories of the complaint; and that only if that issue was resolved in the affirma-

662

■ In *Vallera* v. *Vallera* (1943), *supra*, 21 Cal.2d 681, 684-685 [3], we considered the question "whether a woman living with a man as his wife but with no genuine belief that she is legally married to him acquires by reason of cohabitation alone the rights of a co-tenant in his earnings and accumulations during the period of their relationship." We held that this question "has already been answered in the negative. (*Flanagan* v. *Capital Nat. Bank*, 213 Cal. 664 [3 P.2d 307].) Equitable considerations arising from the reasonable expectation of the continuation of benefits attending the status of marriage entered into in good faith are not present in such a case." While this court has not since had occasion to speak to the precise point, we adhere to the *Vallera* rule.[2]

■ Seeking to avoid the effect of this rule, plaintiff quotes as applicable here our further statement in *Vallera* (p. 685 [4] of 21 Cal.2d) that "If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property. [Citations.] Even in the absence of an express agreement to that effect, the woman would be entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition. [Citations.]" We do not depart from that proposition. But here the trial court found, as stated in its memorandum decision, "no evidence of financial contributions by Plaintiff toward the property here concerned. Nor is there evidence sufficient to support any agreement upon which a joint enterprise or copartnership

tive would they try "the issue of the accounting as to how much money was accumulated over the period of time in question, and what amounts, if any, the plaintiff would be entitled to."

[2]The rule has been applied in a number of District Court of Appeal decisions since *Vallera* (e.g., *Lazzarevich* v. *Lazzarevich* (1948) 88 Cal. App.2d 708, 719 [7] [200 P.2d 49]; *Baskett* v. *Crook* (1948) 86 Cal. App.2d 355, 361-362 [4] [195 P.2d 39]; *Oakley* v. *Oakley* (1947) 82 Cal. App.2d 188, 190 [4]—192 [5] [185 P.2d 848]), and has recently been invoked by the highest courts of several sister jurisdictions (e.g., *Stevens* v. *Anderson* (1953) 75 Ariz. 331 [256 P.2d 712, 715 [7]]; *Wellmaker* v. *Roberts* (1958) 213 Ga. 740 [101 S.E.2d 712, 713]; *Sparrow* v. *Sparrow* (1957) 231 La. 966 [93 So.2d 232, 234 [1]]; *Smith* v. *Smith* (1949) 255 Wis. 96 [38 N.W.2d 12, 14 [2]]).

It may be pointed out that in denying relief in cases of this nature the courts have not discriminated against the woman, but have also rejected where appropriate the claim of the man. (See, e.g., *Gjurich* v. *Fieg* (1913) 164 Cal. 429 [129 P. 464, Ann.Cas. 1916B 111]; *McQuin* v. *Rice* (1948) 88 Cal.App.2d 914 [199 P.2d 742]; *Baskett* v. *Crook* (1948), *supra*, 86 Cal.App.2d 355; cf. *Beuck* v. *Howe* (1946) 71 S.D. 288 [23 N.W.2d 744]; *Orth* v. *Wood* (1946) 354 Pa. 121 [47 A.2d 140]; *Wosche* v. *Kraning* (1946) 353 Pa. 481 [46 A.2d 220].)

could be based." In an effort to bring her case, nevertheless, within the purview of the just quoted language from *Vallera*, plaintiff stresses a finding of the trial court concerning the nature of her services during the period of cohabitation,[3] and on this basis contends that in *Vallera* "When it used the word 'funds' the Court did not mean 'money' only. It referred to any contribution made by the woman, at least to any contribution other than her services as a housekeeper, cook and homemaker for which she may have been compensated either wholly or in part by support furnished."

The contention is without merit. ▮ When a word is used which has a well-established meaning in common parlance—such as "funds"—the necessities of intelligible communication require that it be assumed that the user intended that common meaning. There is no mystery surrounding the word here questioned by plaintiff. ▮ The dictionary defines it as "available pecuniary resources ordinarily including cash and negotiable paper" (Webster's New Internat. Dict. (3d ed. 1961), p. 921), and in a legal context the courts have also taken it to include property of value which may be converted into cash (see *California Gas & Elec. Corp.* v. *Union Trust Co.* (1918) 178 Cal. 65, 71 [172 P. 146]; *State* v. *Finney* (1935) 141 Kan. 12 [40 P.2d 411, 421 [10]]). A simple reading of both of the *Vallera* opinions demonstrates that the members of the court intended and understood the word "funds" to be used in this common, everyday sense. Indeed, the dissenting opinion in *Vallera* expressly stated it to be "the conclusion of the majority opinion that in order to sustain the judgment of the trial court there must be proof of a definite *monetary* contribution by the plaintiff in the form of separate *property*, or a contribution of her *earnings*

---

[3] "The court further finds that during said period of cohabitation the plaintiff did perform the usual and customary work of a housewife, such as cooking, housecleaning, laundry, shopping and running household errands and generally managing the household, and further that during a portion of the period of cohabitation between the parties, to wit, the years 1938 to 1946, plaintiff did perform work and labor for the mutual benefit of defendant and plaintiff on a certain ranch situate in Butte County, California, standing of record in the name of and owned by defendant, said services consisting of helping in the performance of farm labor, including the raising of turkeys, chickens, sheep, cattle, the clearing of land, the sowing, raising and harvesting of grain crops and the growing and harvesting of nut crops. The court further finds that on a few occasions during the years 1947 through 1956, the plaintiff assisted defendant in connection with the operation of his real estate brokerage business, furniture business and the buying and selling of real estate, timber and timber lands."

as a waitress or from other employment outside the home.''
(Italics added.) (*Vallera* v. *Vallera* (1943), *supra,* 21 Cal.2d
681, 686.) Plaintiff's reliance on subsequent decisions of this
court and the District Court of Appeal which cite *Vallera* is
misplaced, as none extends the word ''funds'' beyond its in-
tended, common-sense meaning.

It follows that *Vallera* is not authority for plaintiff's prin-
cipal contention that a woman who cohabits with a man in a
knowingly meretricious relationship is entitled to an interest
in the property acquired in the latter's name during the
period of such cohabitation ''to the extent the woman renders
services not included in the usual services of a housekeeper,
cook and homemaker. . . .'' Nor, as will be shown, is there
any sound basis in law or in equity upon which that proposi-
tion can be sustained.

 To begin with, it will be observed that plaintiff is
not seeking to recover the reasonable value of services rend-
ered to defendant, but rather is claiming *an interest in the
property* standing in defendant's name and acquired during
the period of cohabitation. This being so, plaintiff cannot rely
on either (1) a theory of contract ''implied in fact'' or (2) a
theory of quasi contract or contract ''implied in law.'' (See
Civ. Code, § 1621; *Desny* v. *Wilder* (1956) 46 Cal.2d 715,
735 [20]—737 [24] [299 P.2d 257].) Under the for-
mer theory, where one party performs for another, with
expectation of payment, a special service of a character which
is ordinarily charged for and the latter knowingly accepts it
in circumstances negating an inference of gift, a contract to
pay the reasonable value thereof will be implied.[4] Under
the latter theory (quasi contract) it has been held that, where
no ''marital'' property has been jointly accumulated, a bona
fide putative spouse may recover the reasonable value of her
services over and above the value of the support and mainte-
nance furnished by the other party. (*Sanguinetti* v. *Sangui-
netti* (1937) 9 Cal.2d 95, 100 [5]—101 [6] [69 P.2d 845,
111 A.L.R. 342]; cf. *Caldwell* v. *Odisio* (1956) 142 Cal.App.
2d 732, 735—736 [3] [299 P.2d 14].) While either
theory would be available to plaintiff if she could otherwise

---

[4] See, e.g., *Bush* v. *Lane* (1958) 161 Cal.App.2d 278 [326 P.2d 640]
[warehouse storage of personal effects]; *Nikolaus* v. *Howe* (1954) 122
Cal.App.2d 422 [265 P.2d 99] [haulage of ore to dump]; *Medina* v.
*Van Camp Sea Food Co.* (1946) 75 Cal.App.2d 551 [171 P.2d 445]
[transportation of cargo of fish from Canal Zone to San Diego]; *W. R.
Campbell Co.* v. *Herbert's of Los Angeles* (1930) 110 Cal.App. 244 [293
P. 805] [real estate brokerage services].

comply with its specific requirements, no such compliance appears on the present record; and in any event, under neither theory can there be recovery of *a share of the property* that might have been benefited by her services.[5]

█ It is code law that "when a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." (Civ. Code, § 853.) This rule "applies to personal property as well as to real property." (*Goes* v. *Perry* (1941) 18 Cal.2d 373, 379 [6] [115 P.2d 441].) █ And "a resulting trust may be established in a fractional interest in property where the one urging the trust pays only a portion of the purchase price." (*Watson* v. *Poore* (1941) 18 Cal.2d 302, 317 [14] [115 P.2d 478].) These principles are settled beyond question, and have been applied to real property acquired by the parties to a meretricious relationship (*Padilla* v. *Padilla* (1940) 38 Cal.App.2d 319, 321 [1] [100 P.2d 1093]). But they are of no avail to plaintiff. █ "It is also a familiar rule that it is incumbent upon him who would claim that a trust exists in his favor to establish the fact by clear, convincing, and unambiguous testimony; that the presumption that the person in whose name the legal title to land is vested is the absolute owner thereof is not to be overcome by surmise or conjecture . . .; and that, if [the person asserting the trust] would claim an interest *pro tanto* according to the proportion of the consideration furnished by him, he must show the precise amount paid by him, as well as the amount for which the purchase was made, in order that the court may determine the respective rights of the parties in the property purchased." (*Woodside* v. *Hewel* (1895) 109 Cal. 481, 484-485 [42 P. 152]; accord, *Socol* v. *King* (1950) 36 Cal.2d 342, 348 [7] [223 P.2d 627], and cases there cited.) Plaintiff did not, and manifestly cannot, sustain that burden.

---

[5]A constructive trust, of course, will not be imposed for the value of services rendered. "A constructive trust does not arise unless there is property [i.e., property *transferred to the trustee*] on which the constructive trust can be fastened, . . . Thus, although a constructive trust arises where a transfer of the title to land or a chattel or a chose in action is obtained by fraud, yet where by fraud a person is induced to render services, no constructive trust arises, even though the person rendering the services is entitled to recover the value of his services." (Rest., Restitution, § 160, com. i.) For the reasons given hereinafter in discussing the law of resulting trusts, it is apparent that there is no "property" of plaintiff standing in defendant's name "on which [a] constructive trust can be fastened. . . ."

In the majority of cases involving a resulting trust the consideration furnished by the beneficiary of the trust for the purchase of the property is, of course, money or other property of value. Here plaintiff does not contend that she furnished any consideration in the form of money or property, but rather that she furnished "services not included in the usual services of a housekeeper, cook and homemaker. . . ." The issue, therefore, is whether such services may constitute consideration for an interest in defendant's property upon which a resulting trust may be declared.

In appropriate circumstances "where A performs services in consideration of which land is transferred to B, B presumptively holds upon a resulting trust for A; and if the services are a part of the consideration, B holds upon a resulting trust pro tanto." (4 Scott on Trusts (2d ed. 1956), p. 3080.) In the reported cases applying this rule, however, A renders services *to X, the grantor,* with the understanding that A will be compensated therefor, and X then transfers to B legal title to certain property *in payment for such services.* Thus, in *Robarts* v. *Haley* (1884) 65 Cal. 397 [4 P. 385], the plaintiff and the defendant, both attorneys, had jointly represented a group of litigants in an action for partition of land. At a time when the plaintiff was absent from the state the defendant procured from their clients, as "full pay and satisfaction for" such joint services, a deed to himself of certain valuable property. The plaintiff brought suit to compel the defendant to convey to him an undivided one-half interest in that property. In affirming a judgment for plaintiff the court held (*id.* at p. 402) that "This land here was purchased by professional services rendered by plaintiff and defendant under a contract made with them; the conveyance having been made to the defendant under these circumstances, a trust results to the plaintiff by operation of law." (See also *Dougherty* v. *California Kettleman Oil Royalties, Inc.* (1937) 9 Cal.2d 58, 81 [10] [69 P.2d 155] [services of a promoter, under an agreement to obtain an oil prospecting permit in exchange for an interest in the profits]; *Aborn* v. *Searles* (1893) 18 R.I. 357 [27 A. 796, 797] [services of a real estate agent, the conveyance of the property to be in lieu of commission]; *White* v. *Sheldon* (1868) 3-4 Nev. 739, 746 [services of attorney, under an agreement to hold the property in trust for the attorney in lieu of paying his fees].)

But in the case at bench plaintiff admittedly rendered no services to any grantor of property standing in defendant's name; and it cannot be said that the services which

she rendered to defendant "purchased" any of that property within the meaning of the law of resulting trusts. The property before the court was principally derived from the operation and sale of (1) defendant's ranch in Butte County and (2) defendant's real estate and furniture businesses. As noted above, the evidence shows that defendant owned the ranch for some 15 years before the inception of his relationship with plaintiff, and that at the time he met plaintiff the property was substantially improved and stocked with domestic animals. In the finding on which plaintiff relies in this connection (*ante,* fn. 3) the court accurately described plaintiff's "non-wifely" services as "consisting of *helping in the performance of farm labor,* including the raising of turkeys, chickens, sheep, cattle, the clearing of land, the sowing, raising and harvesting of grain crops and the growing and harvesting of nut crops." (Italics added.) In short, plaintiff did various farm chores and assisted in the operation of the ranch. But it is settled in this state that even actual *monetary* contributions to make *improvements* on real property do not raise a resulting trust in favor of the contributor. (*Elliott* v. *Wood* (1949) 95 Cal.App.2d 314, 318 [6] [212 P.2d 906]; *McQuin* v. *Rice* (1948), *supra,* 88 Cal.App.2d 914, 917—918 [4], and cases there cited; 4 Scott, *op. cit. supra,* p. 3078.) *A fortiori,* a resulting trust cannot be predicated on plaintiff's contribution of *services* to the *operation* of the ranch, long after legal title thereto had vested in defendant alone. And as plaintiff thus acquired no interest in the property itself while it was owned by defendant, she acquired no interest in the proceeds of its sale in 1946.[6]

---

[6]The point is illustrated by *Hayworth* v. *Williams* (1909) 102 Tex. 308 [116 S.W. 43, 45, 132 Am.St.Rep. 879], one of the two decisions cited in *Vallera* v. *Vallera* (1943), *supra,* 21 Cal.2d 681, 685 [4], in support of the passage now relied on by plaintiff (quoted *ante,* p. 662). In that case the real property in issue had been conveyed by deed to the decedent for a recited cash consideration while he and Margreth Williams were knowingly living in unwedded cohabitation. The Texas court held that "If Margreth Williams can show that the money with which the land was purchased was acquired in whole or in part by her labor in connection with [decedent] Thomas Jefferson before the time when the land was purchased, then she would be entitled to a share in the land in the proportion that her labor contributed in producing the purchase money. *Nothing which she did in contributing to the improvement of the property or otherwise in connection with Thomas Jefferson after the deed was made and the land paid for can affect the title.* Her right must have existed in the fund which purchased the land, and *no trust in favor of Margreth Williams will arise out of the dealings between her and Jefferson after the title had vested in him.*" (Italics added.)

After the sale of the ranch defendant engaged, at least part of the time, in the real estate and furniture businesses. There is neither allegation nor evidence that plaintiff furnished any of the funds or properties used in such businesses; and with respect to her asserted contribution of services in this connection the court found (*ante*, fn. 3) only that "*on a few occasions* during the years 1947 through 1956, *the plaintiff assisted defendant in connection with the operation of* his real estate brokerage business, furniture business and the buying and selling of real estate, timber and timber lands." (Italics added.) The evidence as to plaintiff's role in defendant's real estate business, for example, shows that she occasionally took telephone messages for him while he was out, and sometimes accompanied him on longer trips. A resulting trust in defendant's businesses cannot be predicated on such services.

It is not enough simply to assert that if by her work on defendant's ranch or in defendant's businesses plaintiff "increased the value" of that ranch or those businesses, she thereby furnished "consideration" in the amount of such increase and is entitled to a proportionate share in the proceeds of sale. The labor of a farm hand or the sales effort of a realtor's agent or a furniture store employe also "increases the value" of the ranch or the business where he works; yet it is manifest that he thereby acquires no interest in the property itself or in the proceeds of its sale, in the absence of a specific agreement to that effect with the owner. The rule is not different when the parties are a man and a woman knowingly living in unwed cohabitation. If anything, in such a situation the implication is even stronger that any services performed by one party in assisting in the operation of the other's business or trade, without an express agreement for compensation or for sharing in joint accumulations, are intended by the one performing them as gifts or as his or her contribution to the general living expenses of both. (*McQuin* v. *Rice* (1948), *supra*, 88 Cal.App.2d 914, 918 [6] ; *Baskett* v. *Crook* (1948), *supra*, 86 Cal.App.2d 355, 359 [1].)

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Traynor, J., McComb, J., White, J., and Dooling, J., concurred.

PETERS, J.—I dissent:

The majority opinion adopts a double standard that is neither moral nor legal. It tells us that a woman who has

"sinned," by knowingly entering into a meretricious relationship, is not to be permitted to share in property that she helped to accumulate, and that all such property is to go to the man involved, even though he has also "sinned," at least in equal degree. In other words, the majority opinion says that even though the property before the court may have been acquired, in part, as a result of the nonmarital and valuable services of the plaintiff, as a matter of law, she has no legal or equitable right in that property because she knowingly entered into a meretricious relationship. That is not and should not be the law.

The facts, generally, are correctly set forth in the majority opinion, although the key facts are there under-emphasized. These parties lived together as husband and wife for nearly the entire period from 1938 to 1956. Undoubtedly, the relationship was meretricious, and the finding that both parties knew that it was is supported by the evidence. During this period the plaintiff managed the household and performed all the customary duties of a housewife. But the court found, and the finding is supported, that she did much more. It found that from 1938 to 1946 "plaintiff did perform work and labor for the mutual benefit of defendant and plaintiff on a certain ranch situate in Butte County, California, standing of record in the name of and owned by defendant, said services consisting of helping in the performance of farm labor, including the raising of turkeys, chickens, sheep, cattle, the clearing of land, the sowing, raising and harvesting of grain crops and the growing and harvesting of nut crops. The court further finds that on a few occasions during the years 1947 through 1956, the plaintiff assisted defendant in connection with the operation of his real estate brokerage business, furniture business and the buying and selling of real estate, timber and timber lands."

This finding is amply supported by the record. Even the defendant testified that some such services were rendered.

There is substantial evidence that during the period the parties resided on defendant's ranch—1938 to 1946—a large commercial turkey flock was purchased and maintained by them, and that this flock was entirely cared for by the plaintiff. Other poultry kept on the farm were taken care of by plaintiff, and during the lambing seasons (a large number of sheep were maintained on the ranch) plaintiff took care of the numerous "orphan" lambs that otherwise would have died. There is also evidence, substantiated by apparently dis-

interested witnesses, that she helped to herd or drive the cattle on the ranch kept there for commercial purposes. There is substantial evidence that she helped to clear certain areas of the ranch by working with the men to clear off rocks, and thus made these areas available for cultivation. There is also substantial evidence that she not only grew and maintained a large vegetable garden, but that she helped sow and harvest the commercial crops, including not only grain but nut crops as well. These are not the customary duties of a housewife.

In 1946 defendant sold the ranch, which he had owned prior to the inception of his relationship with plaintiff, and from then until 1956, engaged in the real estate and furniture businesses, or spent his time traveling about the country for pleasure with plaintiff. There is evidence that during this period the plaintiff assisted defendant to some extent in those businesses.

The extent, if any, that these activities may have enhanced the value of the fund before the court does not appear. The parties stipulated, and the trial court agreed, that the parties should first try the issue of whether, under the facts, plaintiff was entitled to anything. In the event it was found that she was entitled to nothing, then no further proceedings would be held, but in the event it was determined that she was entitled to something then the extent of defendant's property, and the amount, if any, that this property was enhanced by the efforts of plaintiff, would be tried. Since the trial court found that plaintiff was entitled to nothing, the evidence on those issues was never presented. The record does show, without conflict, that defendant owned a run-down ranch as his sole and separate property prior to 1938 and prior to the time he met the plaintiff, and that this ranch, vastly improved, and all the flocks and herds and property on it, were sold in 1946 for a very substantial figure. How much, if any, the amount secured was due to the extramarital services of the plaintiff does not appear. But the fact is that there is a fund of money before this court that was created by the joint efforts of the parties.

The trial court found and concluded that, as a matter of law, plaintiff was entitled to no portion of this jointly earned fund. The majority opinion affirms this result. It reasons that, in the absence of an agreement of joint venture or partnership, the plaintiff is without remedy because she knowingly entered into the meretricious relationship. In reaching this result the majority opinion purports to follow the rule of

*Vallera* v. *Vallera*, 21 Cal.2d 681 [134 P.2d 761]. That case announced no such rule, but, in fact, announced a rule quite to the contrary.

In *Vallera*, as in the instant case, the parties entered into the relationship both knowing that they were not married. In *Vallera*, during the period of the illicit relationship, unlike the instant case, the plaintiff contributed only normal marital services. Three of the members of this court (I was one, then sitting as a pro tem. justice) were of the opinion that, even in such a case, the plaintiff should be permitted to share in the property jointly acquired during the period of cohabitation. The four justices constituting the majority, apparently feeling bound by prior decisions, held that marital services alone were not sufficient to permit the woman to share in the property. If it be assumed that the rule announced in *Vallera* by the majority correctly states the law of this state, an assumption I think is incorrect, that rule offers no help to the majority in the present case.

In *Vallera*, after holding that a woman who lives with a man in the good faith belief that a valid marriage exists may share in the property acquired by them during the existence of the relationship, the court posed the specific problem involved as follows: "The controversy is thus reduced to the question whether a woman living with a man as his wife but with no genuine belief that she is legally married to him acquires by cohabitation alone the rights of a co-tenant in his earnings and accumulations during the period of their relationship. It has already been answered in the negative. [Citation.]" (21 Cal.2d at p. 684.)

This is the rule that the majority believes is controlling in the present case. But note that the quoted rule merely holds that the plaintiff is not entitled to share in their accumulations by reason of "cohabitation alone," and Mr. Justice Traynor, speaking for the majority, was very careful to so limit the rule. He also was very careful to point out that where, in addition to "cohabitation alone" the woman contributes to the joint acquisition her own funds or property, she is entitled to share in the property in the proportion that her funds or property contributed towards its acquisition. It is submitted that the majority also held that the same rule applies where the woman's contribution, in addition to "cohabitation alone" also consists of services in excess of normal marital services. The exact words used by the court were these (p. 685):

"Plaintiff's lack of good faith in alleging the belief that she had entered into a valid marriage would not, however, preclude her from recovering property to which she would otherwise be entitled. If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property. [Citations.] Even in the absence of an express agreement to that effect, the woman would be entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition. (*Hayworth* v. *Williams, supra,* 102 Tex. 308 [116 S.W. 43]; *Delamour* v. *Roger,* 7 La.Ann. 152.)"

The key word in that quotation, so far as the instant problem is concerned, is "funds." By the use of that term did the majority in *Vallera* intend to include extramarital services as well as money and perhaps negotiable paper? The word "funds" could, of course, mean only money, and perhaps negotiable paper. The majority, in the instant case, so interpret the term by referring at some length to its dictionary definitions, and by disregarding the holdings of the two cases cited by Mr. Justice Traynor as indicative of the meaning of the term "funds" in the quotation in question. Those two cases—the *Hayworth* and *Delamour* cases—make it crystal clear that as used in that quotation the term was intended to include services as well as money or tangible property. In one of those cases (the *Hayworth* case) the "funds" contributed were services alone, while in the other (the *Delamour* case) services and money were both contributed. In both cases it was held that, just as where the woman contributes money towards the acquiring of the accumulations, she is entitled to a proportionate share of those accumulations, where her contribution consists of services, other than the normal services of a wife.

The theory of these cases is sound and is based on sound public policy. Obviously, if the two were not illegally living together, the woman could recover. In that event it would be a plain business relationship and a contract would be implied. Illicit cohabitation does not invalidate an otherwise valid relationship. The man is not entitled to benefit from such nonwifely services simply because the two have illegally cohabitated. (See *Succession of Llula,* 44 La.Ann. 61 [10 So. 406, 407]; *Succession of Pereuilhet,* 23 La.Ann. 294, 295 [8 Am.Rep. 595]; *Viens* v. *Brickle* (La.) 8 Mart. (O.S.) 11;

*Babb* v. *Carroll,* 21 Tex. 765; *Bracken* v. *Bracken,* 52 S.D. 252 [217 N.W. 192, 194]; *West* v. *Knowles,* 50 Wn.2d 311 [311 P.2d 689, 692] (concurring opinion); *Smith* v. *North Memphis Savings Bank,* 115 Tenn. 12 [89 S.W. 392]; *Casini* v. *Lupone,* 8 N.J. Super. 362 [72 A.2d 907].)

The majority opinion, with some apparent reluctance, concedes that where the sinful plaintiff contributes money or property towards the joint acquisition she may proportionately recover in spite of the meretricious relationship. It reaches this conclusion not only by adopting a very limited definition of the term "funds" as used in *Vallera,* but also purports to reach the same result by an interesting but inapplicable discussion of the law of trusts. The majority would permit a recovery, apparently on the theory of resulting trust, when the plaintiff contributes money or tangible property towards acquisitions taken in the name of defendant. In other words, if the woman contributes cash or tangible property worth $1,000 towards the creation of a fund of $2,000, she could, upon termination of the relationship, recover one half of the property. But if she renders nonmarital services worth $1,000 and the man contributes $1,000 in property towards the fund, she can recover nothing. In such event, the majority would say that she has furnished no "consideration" towards the acquisition of the property that is before the court. Services, of course, as well as money or property, can constitute "consideration."

The problem is very simple. There is before the court a fund in the name of defendant. The plaintiff seeks to establish an interest in that fund. That fund consists largely of money received from the sale of defendant's ranch and the sale of turkeys, sheep and cattle. How much, if any, the value of that ranch, and of the value of the turkeys, sheep, and cattle was created or increased by the services of plaintiff does not appear in the evidence, because of the stipulation under which the case was tried. The majority opinion simply holds that, assuming that the fund was created in substantial part by the nonmarital services, plaintiff as a matter of law is entitled to nothing.

The majority seem greatly concerned about the legal theory upon which the plaintiff may recover, and indulge in a highly technical discussion of the law of resulting trusts in order to demonstrate that no such trust exists. I find no difficulty in finding a remedy. It is of little importance whether we say that plaintiff's rights may be enforced on the theory of a

resulting trust, or a constructive trust, or upon the theory of an equitable lien. The three are frequently confused (49 Cal.Jur.2d, § 349, p. 188). In *Holder* v. *Williams*, 167 Cal. App.2d 313, 315 [334 P.2d 291], it was stated:

"Resulting trusts, constructive trusts and equitable liens are very much akin to each other, and their basic purposes to identify and impress upon certain property the beneficial rights that have arisen in an innocent party who in some way contributed to the acquisition, protection or improvement of that property are, in general, the same."

The essential principle is one of equity. Where the "consideration" for property, real or personal, is wholly or in part furnished by one party and title is taken in another, and the circumstances negative the concept of a gift, equity will intervene to protect the rights of the first party. Usually we refer to this as a resulting trust, raised by operation of law, based upon the presumed intention of the parties to deal fairly with one another. This rule is codified as to real property in this state (Civ. Code, § 853), but "[a]lthough the statute specifies real property, the presumption is equally applicable in the case of personal property." (49 Cal.Jur.2d, § 358, p. 199.)

It is quite elementary that under the circumstances here involved an inference arises that defendant holds the joint fund in trust in part for plaintiff. This is an inference based on common sense and on the implied intent of the parties. It certainly does no lasting harm to the law to indulge in the mild presumption that parties intend to deal fairly with each other and that such presumption will be enforced by presuming the intent to create a trust. (See, generally, 54 Am.Jur., § 195, p. 153; § 203, p. 158.)

The real question in all such presumed trust situations is whether "consideration" was furnished in whole or in part by one person and title taken in the name of another. "Consideration" is the essential fact that is determinative of equitable ownership by whatever name it is called. The concept that "consideration" can only exist when it is something tangible, a concept inherent in the majority opinion, violates fundamental contract and trust principles. American Jurisprudence states the principle as follows: "Such equitable consideration may in general be any consideration of value, property, or *labor*. . . ." (Italics added. 54 Am.Jur., § 194, p. 153.) Again at page 159, section 203, it is stated (citing many cases): "It is essential that there be an actual payment

of money, property, or *services*, or an equivalent, constituting valuable consideration." (Italics added.)

In 3 Scott, Trusts (1939 ed.) page 2296, it is stated: "where A performs *services* in consideration of which land is transferred to B, B presumptively holds upon a resulting trust for A; and if the *services* are a part of the consideration, B holds upon a resulting trust *pro tanto*." (Italics added.)

In 49 California Jurisprudence, Second Edition, section 362, at page 203, it is stated that the trust arises when consideration is paid by one person and the title is taken in another, and that "it makes no difference in principle whether the consideration be money or other property. It may be the performance of *services*. . . ." (Italics added.) (See also *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. 2d 58 [69 P.2d 155] (services in procuring oil permit), and *Osborne* v. *Endicott*, 6 Cal. 149 [65 Am.Dec. 498] (services as attorney).)

In *White* v. *Sheldon*, 3-4 Nev. 739, at page 746, the principle is stated in the following clear language: "Upon these facts it is argued that the services performed by White did not raise an implied trust in his favor. Counsel attempt to make a distinction between the payment of money in cases of this kind and the rendering of services, but we apprehend the distinction is one not recognized in the books nor maintainable on principle. Equity looks to the consideration, and creates a trust in favor of him who furnishes it, regardless of whether such consideration be money or labor, or property given in exchange. Implied trusts are based upon the broad principle that he who furnishes the consideration is entitled to the property, and equity does not permit any unsubstantial distinctions to defeat the operation of its liberal and rational rules. We know of no principle of ethics or equity which would justify the creation of a trust in favor of him who furnishes money wherewith to purchase property, that would not also create it in favor of him who renders services or labor for the same purpose."

Of course, the burden of proving how much her services contributed to the fund rests on plaintiff. But the law, equity, and principles of justice and morality all dictate that plaintiff should be given the opportunity to prove her point if she can.

I would reverse the judgment.

Appellant's petition for a rehearing was denied June 13, 1962. Peters, J., was of the opinion that the petition should be granted.