BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE STEVEN N. SAMUELIAN, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a regional financial development corporation guarantee a loan based upon funds that were transferred by the Legislature from the Small Business Expansion Fund to the General Fund pursuant to the Budget Act of 2002-2003?
 CONCLUSION
A regional financial development corporation may not guarantee a loan based upon funds that were transferred by the Legislature from the Small Business Expansion Fund to the General Fund pursuant to the Budget Act of 2002-2003.
 ANALYSIS
The Legislature has enacted the California Small Business Financial Development Corporation Law (Corp. Code, §§ 14000-14099; "Act")[1] to promote the development of small businesses throughout the state. Section 14002 declares the Legislature's purposes as follows:
 "It is the intention of the Legislature in enacting this part to promote the economic development of small businesses by making available capital, general management assistance, and other resources, including loan services, personnel, and business education to small business entrepreneurs, including women and minority owned businesses, for the purpose of promoting the health, safety, and social welfare of the citizens of California, to eliminate unemployment of the economically disadvantaged of the state, and to stimulate economic development, employment, minority group, women, and disabled persons entrepreneurship. . . ."
Pursuant to the Act's provisions, 11 regional financial development corporations (§ 14010, subd. (a)) provide loans and loan guarantees to small businesses that request assistance (§§ 14045-14069.6).
The loan guarantee program is financed by money transferred from the state's General Fund to the California Small Business Expansion Fund ("Expansion Fund"), which "shall be used to pay for defaulted loan guarantees . . ., administrative costs of corporations, and those costs necessary to protect a real property interest in a defaulted loan or guarantee." (§ 14030.) All money deposited in the Expansion Fund is "continuously appropriated without regard to fiscal years" (§ 14032), and the amount deposited sets the limit of the state's liability for the loan guarantees. Section 14033 provides:
 "The state shall not be liable or obligated in any way beyond the state money which is allocated in the expansion fund from moneys from the General Fund moneys appropriated for such purposes."
The question presented for resolution concerns whether a regional corporation may guarantee a loan to a small business based upon money that once was in the Expansion Fund but was transferred back to the General Fund in 2002 with a declaration by the Legislature that the transfer constituted a "loan" that would be "repaid with interest." We conclude that a regional corporation may not do so.
The Legislature authorizes regional corporations to guarantee loans up to an amount that is four times the amount of funds contained in the Expansion Fund. Section 14030 states:
 ". . . The amount of guarantee liability outstanding at any one time shall not exceed four times the amount of funds on deposit in the expansion fund, including each of the trust fund accounts within the trust fund, unless the [California Office of Small Business Development] has permitted a higher leverage ratio for an individual corporation pursuant to subdivision (c) of Section 14037."[2]
Consistent with this "four times the amount of funds on deposit" authorization, section 14070 requires a 25 percent reserve for regional corporations when they make loan guarantees:
 "(a) The corporate guarantee shall be backed by funds on deposit in the corporation's corporate fund.
 "(b) Loan guarantees shall be secured by a reserve of at least 25 percent to be determined by the director, unless the [California Office of Small Business Development] authorizes a higher leverage ratio for an individual corporation pursuant to subdivision (c) of Section 14037.
 "(c) The expansion fund and corporate accounts shall be used exclusively to guarantee obligations and pay the administrative costs of the corporations. . . .
" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
In 2002, the Legislature authorized the temporary transfer, or "time specific loan," of $10.7 million from the Expansion Fund back to the General Fund. The Budget Act of 2002-2003 (Stats. 2002, ch. 379) provides in part:
 "2920-115-0918 — For transfer, upon order of the Director of Finance, from the Small Business Expansion Fund to the General Fund . . . (10,700,000)
"Provisions:
 "1. The transfer made by this item is a time specific loan to the General Fund. This loan shall be repaid with interest calculated at the rate earned by the Pooled Money Investment Account at the time of the transfer. It is the intent of the Legislature that repayment be made so as to ensure that the programs supported by this fund are not adversely affected by the loan. It is also the intent of the Legislature that this loan constitutes an asset of the expansion fund that may be encumbered in the same manner as moneys appropriated for those purposes and on deposit in the fund."
Accordingly, the Expansion Fund has currently been reduced by $10.7 million with a declaration by the Legislature that the "loan" will be "repaid" at some future date "with interest."
In interpreting the requirements of the Act, we apply well recognized principles of statutory construction. "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]" (Hunt v. Superior Court (1999) 21 Cal.4th 984, 1000.) "`In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning.'" (Curle v. Superior Court (2001) 24 Cal.4th 1057, 1063.)
Adopting the word's commonly understood meaning, we construe "funds," as used in sections 14030 and 14070, to mean "available pecuniary resources ordinarily including cash and negotiable paper. . . ." (Webster's 3rd New Internat. Dict. (2002), p. 921.) In Keene v. Keene (1962) 57 Cal.2d 657, 663, the court observed:
 ". . . When a word is used which has a well-established meaning in common parlance — such as `funds' — the necessities of intelligible communication require that it be assumed that the user intended that common meaning. There is no mystery surrounding the word here questioned by plaintiff. The dictionary defines it as `available pecuniary resources ordinarily including cash and negotiable paper" [citation], and in legal context the courts have also taken it to include property of value which may be converted into cash [citations]."
With this construction, it is apparent that the $10.7 million "loan" made to the General Fund in 2002 reduced "the amount of funds on deposit in the expansion fund." (§ 14030.) Those funds are no longer there, and accordingly, they cannot provide a basis for a regional corporation's loan guarantee program under the terms of sections 14030 and 14070. The Legislature's assurance that the loan "shall be repaid with interest" some day, however valued it may be, constitutes neither cash nor negotiable paper. (See Hartford v. State Bar (1990)50 Cal.3d 1139, 1151 [stock certificate does not constitute "funds"].)[3]
Our interpretation of the requirements of sections 14030 and 14070 finds support in section 14034, which provides a single investment option for funds on deposit in the Expansion Fund:
 "The director at his or her discretion, with the approval of the Director of Finance, may request the trustee to invest those funds in the trust fund in securities issued by the Treasury of the United States government. Returns from these investments shall be deposited in the expansion fund and shall be used to support the programs of this part."
The Legislature's declaration in the Budget Act of 2002-2003 that it intended to repay the $10.7 million "loan" at some future date does not qualify as "securities issued by the Treasury of the United States government," and the Act contemplates no other form of "investment" for the funds on deposit. Moreover, in contrast to the Legislature's Budget Act language, United States Treasury securities ordinarily may be considered "negotiable paper," and thus "funds," for purposes of sections 14030 and 14070. (See Webster's, supra, at pp. 921, 1514; Cal. U. Com. Code, § 3104; Black's Law Dict., supra, p. 1059; Keene v. Keene, supra, 57 Cal.2d at p. 663.)
Finally, we reject the suggestion that the Legislature's statement in the Budget Act "that this loan constitutes an asset of the expansion fund that may be encumbered in the same manner as moneys appropriated for those purposes and on deposit in the fund" (Stats. 2002, ch. 379, § 2920-115-0918, prov. 1) may be viewed as amending the loan guarantee limitations of sections 14030 and 14070. First, we find such construction of the Budget Act language to be unsupported by the choice of the words used; no mention is made of the terms of sections 14030 and 14070 or of an intent to amend these provisions.
More importantly, to construe the Legislature's language in the Budget Act as statutory amendments would raise substantial doubt as to the constitutional validity of the Budget Act language. Under the Constitution's "single-subject rule" (Cal. Const., art. IV, § 9 ["A statute shall embrace but one subject, which shall be expressed in its title"]), a Budget Act provision may not substantively amend or change existing law or seek to "clarify or correct uncertainties which arose from enforcement of the existing law, or to reach situations which were not covered by the original statute." (California Lab. Federation v. Occupational Safety Health Stds. Bd. (1992) 5 Cal.App.4th 985, 991; see Planned Parenthood Affiliates v. Swoap (1985) 173 Cal.App.3d 1187, 1199.)
The practical effect of this constitutional restriction is to preclude a finding of a substantive statutory amendment unless the Legislature's language or subsequent conduct permits no other interpretation. For example, in Association for Retarded Citizens v. Department of Developmental Services (1985) 38 Cal.3d 384, the Supreme Court analyzed Budget Act language that directed the Director of the Department of Developmental Services to "establish priorities for expenditure of funds," which would "govern the authorization for and expenditure of these funds." (Id. at p. 394.) The court avoided invocation of the single — subject rule by finding that "this language appears simply to instruct the Director to offer regional centers guidance in determining how they may spend the funds appropriated to them in the most cost-effective manner." (Ibid.) The court stated in part:
 ". . . When faced with a statute reasonably susceptible of two or more interpretations, of which at least one raises constitutional questions, we should construe it in a manner that avoids any doubt about its validity. [Citations.] Construed as defendants urge, this language would raise serious constitutional questions under the single subject rule, which provides: `A statute shall embrace but one subject, which shall be expressed in its title.' (Cal. Const., art. IV, § 9.). . . .
 "In order to avoid any doubt about the validity of the Budget Act, we decline to construe it as defendants urge. . . ."
In reaching its decision in Association for Retarded Citizens, the court relied upon 64 Ops.Cal.Atty.Gen. 910 (1981), where we analyzed budgetary language that stated: "`The Director of the Department of Developmental Services shall establish guidelines for the expenditure of funds budgeted for the regional centers.'" (Id. at p. 917.) In our 1981 opinion, we concluded that these "guidelines" were mere "suggestions" rather than "requirements" because, in part, "`the budget bill may deal only with the one subject of appropriations to support the annual budget'" and thus "`may not constitutionally be used to grant authority to a state agency that the agency does not otherwise possess.'" (Ibid.)
Similarly, here, we interpret the language of the Budget Act of 2002-2003 as not substantively amending or changing existing law. The requirements of sections 14030 and 14070 — that only "funds on deposit" may be used as the basis for a regional corporation's loan guarantee program — remain in effect. The Legislature, of course, may amend sections 14030 and 14070 directly if it so chooses. We determine here only that the Budget Act of 2002-2003 did not do so.
We conclude that a regional financial development corporation may not guarantee a loan based upon funds that were transferred by the Legislature from the Expansion Fund to the General Fund pursuant to the Budget Act of 2002-2003.
[1] All statutory citations are to the Corporations Code unless otherwise indicated.
[2] Subdivision (c) of section 14037 allows the total amount of a regional corporation's guaranteed loans to be as high as five times the state funds on deposit if certain conditions are met.
[3] "Negotiable paper" commonly means a written instrument signed by the maker or drawer to pay a specified sum of money on demand or at a definite time either to bearer or to order. (Webster's, supra, at p. 1514; Cal. U. Com. Code, § 3104; Black's Law Dict. (7th ed. 1999), p. 1059.)